3: C. 07-1895

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

Leo F. Schweitzer, III                        :     DOCKET NUMBER
    Plaintiff                             :
                                                                        :

VS.     3: CV :     07-1895

The United States,                            :     DEMAND FOR JURY TRIAL
United States of America                      :     ON APPLICABLE COUNTS
Attorney General of United States             :
Solicitor General of United States            :
Honorable William R. Burchill, Jr.            :
Administrative Off. of U.S. Courts            :
Honorable William J. Haynes, II               :
U.S. Department of Defense                    :
Honorable Gerald Auerbach                     :     C I V I L     A C T I O N
United States Marshalls Service               :
Patrick L. Meehan                             :
United States Attorney, Eastern Dist.         :
Honorable Daniel H Huyett, III                :     FILED
Honorable Clarence C. Newcommer               :     SCRANTON
Honorable Magistrate Judge Welsh              :     OCT 18 2007
AUSA Judson A. Aaron  -Personal & Off         :
AUSA Gerald Sullivan  -Personal & Off         :     PER _____
AUSA James Rohn       -Personal & Off         :         DEPUTY CLERK
AUSA Christopher Hall-Personal & Off          :
AUSA Bruce Chason     -Personal & Off         :
AUSA Marsha McClellen-Personal & Off          :
AUSA Richard Goldgerg-Personal & Off          :
Gail White-Agbugui, Probation Per/Off         :
Michael Santella,    Probation Per/Off        :
Donald Miller,       Probation Per/Off        :
Sally Keglovits,     Probation Per/Off        :
Christopher Mauhn,   Probation Per/Off        :

Continued on Page Two

```
Robert McKenney, FBI - Personal & Off :
William Alone,   FBI - Personal & Off :
Stephen Ford,    FBI - Personal & Off :
William Evans,   FBI - Personal & Off :
Robert Coons,    DOD - Personal & Off :
John Doe #1,     DOD - Personal & Off:
John Doe #2,     DOD - Personal & Off :
John Doe #3,     DOD - Personal & Off :
Jonh Doe #4,     NCIS - Personal & Off :
John Doe #5,     NCIS - Personal & Off :
Teah Wedlock,    USPC           :
Scott Kubric,    USPC           :
Comm. Simson,    USPC           :
John Doe #6,     USPC           :
P.Douglas Sisk, Clerk           :
Bradford A. Baldus, Legal Advisor :
Jeffery Miller, Esquire         :
Narsuti & Miller                :
Gavin Lentz                     :
Botchetto & Lentz               :
Conrad, O'Brian, Gellman, & Rohn :
John Dunn & Dianna Dunn         :
```

```
Detective Todd,      - Personal & Off::
Plymouth Township, Montgomery Twp.  :    State Actors
Pennsylvania                        :
```

**FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
SCRANTON

OCT 18 2007

PER _____

DEPUTY CLERK

34024 066

(Inmate Number)

Schweiker

(Name of Plaintiff)

_____

(Address of Plaintiff)

3: CV 07-1895

_____

(Case Number)

COMPLAINT

vs.

UNITED STATES

ETAL

_____

(Names of Defendants)

AS LISTED ON
INTRO PARA
A + B

TO BE FILED UNDER: _____ 42 U.S.C. § 1983 - STATE OFFICIALS

_____ 28 U.S.C. § 1331 - FEDERAL OFFICIALS

X 28 USC 2671, 1367(A)  42 USC 1983 /1985(3) 1988
X 28 USC 1331, 1343, 1346 (b)

I.    Previous Lawsuits

A.    If you have filed any other lawsuits in federal court while a prisoner please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

_____

_____

_____

_____

II.   Exhaustion of Administrative Remedies

A.    Is there a grievance procedure available at your institution?
      _____ Yes    X No

B.    Have you filed a grievance concerning the facts relating to this complaint?
      X Yes    _____ No

      If your answer is no, explain why not _____ FORM 95 TORT CLAIM
      ATTACHED TO PETITION

C.    Is the grievance process completed? X Yes    No

III.    Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use Item B for the names, positions and places of employment of any additional defendants.)

A.    Defendant _____See ATTAchⁿ Comⁿ_____ is employed

as _____ at _____

B.    Additional defendants_____

_____

_____

_____

IV.    Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

1.    _____

_____See Complaiⁿt_____

2.    _____

3.    _____

V.    Relief

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

1.    _____

     _____

     _____ DAMAGES IN TORT _____

     _____

2.    _____ See Complain _____

     _____

     _____

3.    _____

     _____

     _____

     _____

Signed this ___14___ day of ___October___, 200 7 .

                               (Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

___10/14/07___
(Date)                          (Signature of Plaintiff)

Leo F. Schweitzer, III
34024-066
Box 200, Unit G
Federal Prison Camp Canaan
Waymart, Pa. 18472


October 14, 2007


U.S. District Court            Office of the Clerk
235 N. Washington Avenue        United States Court of Federal Claims
Scranton, Pa 18501             717 Madison Place, NW
                               Washington, DC 20005


RE:    Tort Claim - Schweitzer v. United States, etal.


Dear Clerks of Court;

Enclosed please find the following items to be documented before
the court.  These claims were filed via the Department of Justice,
Civil Division, Torts Branch, Washington, DC, dated October 15,
2005, postmarked on November 3, 2005, received on November 7,
2005, and acknowledged by trial attorney, Mary Jo Touhey on
January 12, 2006.

In want of counsel, I am filing in both courts to ensure that
my action is timely filed.  There is considerable conflicting
information as to  exactly which court is the correct forum.

There are also issues of conflict of interest, these matters
touch on a continuing conspiracy to circumvent review on the
part of the defendants.

I am in want of counsel and as a "Pro Se" petitioner, access
to voluntary, non-binding alternative dispute resolution ARD
tools, would greatly aid me in presenting my claims, quite
frankly, I am at a loss to find any such tools available in
the Third Circuit, and being subject to "Pre-Screening " as
a incarcerated individual, may lead to the screening actually
imposing "affirmative defenses" which are the duty of the
opposing parties.  There is no question that the complaint
states a claim, upon which relief may be granted.

In good faith and fair dealing, I believe that a full disclosure
of the above is appropriate and in consideration of the courts
authority under 28 U.S.C. 1631, to transfer actions to the
appropriate court if jurisdiction is in a different forum.

I am located in the Middle District of Pennsylvania and have
filed concurrently in the Middle District, Scranton, I have
found the courts in the Middle District willing to consider
and review filings from incarcerated individuals.

Page Two

I also have access to federal case law at my location, I do
not however have any Pennsylvania law, there is no case law,
statutes, constitution, or any law or information relative
to the law of the forum.  I have requested a Pennsylvania
Statutes Annotated book, but have been told it is not required.

Under no circumstance will I consider the forum for my action
to rest in the Eastern District, the conduct complained upon
is still festering in Philadelphia and Allentown, Pennsylvania.
In truth and in fact, it would again be swept under the table.

The conduct complained upon in my action, and the circumvention
of redress has counterparts in other circuits, in particular,
the same patterns of conduct have been exposed and addressed
recently in the District of Massachussets, in the Eastern District
it is yet unacknowledged.

To the best of my ability, I have timely filed and perfected
my claims before the court.  I have served the Attorney General,
and also the Committee on Government Reform, U.S. House of Represen-
tatives. Officially, I must have a "summons" signed and sealed
by the clerk of court to perfect all the other required filings.

Please provide me with a "Docket Number" and proof acknowledging
receipt for purposes of timeliness.

I thank you for your time and consideration of these complicated
matters, and look forward to receipt of the above information.


             With An Eye Toward A Favorable Resolution;
               I Offer My Right Hand In Kindness.


                    Leo E. Schweitzer, III
                      In Want Of Counsel

CC:   Government Reform
      Aleta Bodolay
      Mary Jo Touhey



**U.S. Department of Justice**

*Civil Division, Torts Branch*
*Federal Tort Claims Act Staff*

---

| | |
|---|---|
| *Mary Jo Touhey*<br>*Trial Attorney* | *Post Office Box 888*<br>*Benjamin Franklin Station*<br>*Washington, D.C. 20044* |

PJP:MJTouhey:hls
157-16-NEW

January 12, 2006

Leo F. Schweitzer, III
#34024-066
FPC Canaan
Box 200, Unit G
Waymart, PA 18472

      RE:   <u>Administrative Tort Claim of Leo F. Schweitzer, III</u>

Dear Mr. Schweitzer:

      The administrative tort claim dated October 15, 2005, which you presented to the Department of Justice on November 7, 2005, was referred to this office for handling.

      Your claim has been assigned to me for handling. As soon as I have reviewed the material, I will contact you. Should you have any questions in the interim, please feel free to contact me at the following address:

            **Mary Jo Touhey**
            **Trial Attorney**
            **Torts Branch, Civil Division**
            **United States Department of Justice**
            **Post Office Box 888**
            **Benjamin Franklin Station**
            **Washington, D.C. 20044.**

            Very truly yours,

            *Mary Jo Touhey*

            MARY JO TOUHEY
            Trial Attorney
            Torts Branch, Civil Division

cc w/encls:     Patrick L. Meehan
                United States Attorney
                Eastern District of Pennsylvania
                615 Chestnut Street
                Suite 1250
                Philadelphia, PA  19106

                Honorable Gerald Auerbach
                Acting General Counsel
                United States Marshals Service
                Suite 1200 CSQ3
                600 Army Navy Drive
                Arlington, Virginia  22202-4210

                Honorable William R. Burchill, Jr.
                Associate Director & General Counsel
                Administrative Office of U.S. Courts
                1 Columbus Circle, N.E., Suite 7-290
                Washington, D.C.  20544

                Honorable William J. Haynes, II
                General Counsel
                U.S. Department of Defense
                The Pentagon, Room 3E980
                1600 Defense Program
                Washington, D.C.  20301-1600

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROROVED OMB NO. 1105-0008 EXPIRES 5-31-05 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: Department of Defense Attorney General of US U.S. District Court E.D. of Pennsylvania U.S. Court of Appeals, Third Circuit US Marshalls / US Probation Philadelphia | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) Leo F. Schweitzer, IIII 34024-066 Box 200 - Unit "G" FPC Canaan Waymart, Pa. 18472 |
|---|---|

| 3. TYPE OF EMPLOYMENT MILITARY    CIVILIAN | 4. DATE OF BIRTH 06/04/1955 | 5. MARITAL STATUS S | 6. DATE AND DAY OF ACCIDENT SEE AFFIDAVITS | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

Original 1985 Federal Conviction is unconstitutional.         SEE ATTACHED AFFIDAVITS:
No jury finding of guilt violating 5th &6th Amendments,       1.) 1985 void judgment dtd:1/20/04 [DOD]
& Due Process.  Imprisonment in excess of 10 years, along     2.) 1985 void judgment dtd:1/20/04 [US COURTS]
with the 1985 void judgment being used for enhancement purposes   3.) Keglovits Damage & Harm dtd:1/31/04 [BOP US M]
& to subject Schweitzer to unconscionable governmental        4.) Illegal Shuttling dtd: 12/09/04 [BOP/USM]
conduct. Damage still accruing.                               5.) Failure to credit time dtd:2/11/04 [US BOP]
                                                             6.) 2005 Coercion/Duress Guilty Plea dtd: 10/15/05

| PROPERTY DAMAGE |
|---|
| NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT(Number, street, city, State, and Zip Code) |
| BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side) |

| PERSONAL INJURY/WRONGFUL DEATH |
|---|
| STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT |

**************    SEE  ATTACHED  AFFIDAVITS    **************

| WITNESSES | |
|---|---|
| NAME | ADDRESS(Number, street, city, State, and Zip Code) |
| SEE   AFFIDAVITS | |

| AMOUNT OF CLAIM(in dollars) | | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| | $1,154,901,390.00 | | $1,154,901,390.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side) | 13b. Phone number of signatory | 14. DATE OF CLAIM 10/15/05 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States.   (See 18 U.S.C.A. 287.) |

NSN 7540-00-634-4046

Previous editions not usable

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## I N T R O D U C T I O N

A.      This action for money damages is brought pursuant to
        the First, Fourth, Fifth, Sixth, Eight, Ninth, Tenth,
        Thirteenth, and Fourteenth Amendments to the United
        States Constitution and Title 28 U.S.C 2671, et seq.
        [herinafter the "Federal Tort Claims Act"] and Title
        42 U.S.C. 1983, 1985(3), 1988, and under the common
        law of the Commonwealth of Pennsylvania.

B.      Jurisdiction is based upon 28 U.S.C. 1331, 1343, 1346(b)
        and on the supplemental jurisdiction of the court under
        28 U.S.C. 1367(a) for claims arising under state law.

C.      Plaintiff alleges that the federal and local officals
        sued herein conspired with each other and with other
        unnamed individuals to bring about the wrongful conviction
        and imprisonment of Leo F. Schweitzer, III [hereinafter,
        Schweitzer], in the Eastern District of Pennsylvania,
        Federal Court, and in the Pennsylvania Court in Plymouth
        Township, Montgomery County, Commonwealth of Pennsylvania
        in 1985 and 1996 and thereafter.

## PARTIES

D.      The following person is the plaintiff in this action:

        (1)  Leo F. Schweitzer, III at all times material
             to this complaint was and is a resident of
             Pennsylvania.  He is of full age.

E.      The following persons are the defendants in this action:

    (1)  The United States of America is the
       appropriate defendant under the Federal
       Tort Claims Act and was at all times
       material to this complaint the employer
       of all the defendants, except for:

        (a)  Jeffery Miller
        (b)  Narsuti & Miller
        (c)  Gavin Lentz
        (d)  Botchetto & Lentz
        (e)  Conrad, O'Brian, Gellman & Rohn
        (f)  John & Dianna Dunn

    (2)  Aaron, Sullivan, Rohn, Hall, Chason, McClellan, Goldberg, were at all times material to this complaint Assistant United States Attorneys.

    (3)  Agbugui, Santella, Miller, Keglovits,Mauhn, were at all times material to this complaint Officers in the U.S. Probation Department.

    (4)  Huyett and Newcomer, were at all times material to this complaint Federal Judges.

    (5)  McKenney, Alone, Ford, Evans, were at all times material to this complaint FBI Agents.

    (6)  Coons and John Doe(s) # 1 through # 5 were at all times material to this complaint DOD/NCIS

    (7)  Wedlock, Kubric, Simmson, and John Doe # 6, were at all times material to this complaint U.S. Parole Commission Officials.

    (8)  Todd, was at all times material to this complaint a detective with the Plymouth Township, Montgomery County Police, Pennsylvania. He is sued in his personal capacity.

    (9)  Plymouth Township, was at all times material to this complaint a municipality in Pennsylvania.

    (10) Welsh, was at all times material to this complaint a U.S. Magistrate Judge.

(11) Sisk,Baldus, were at all times material to this complaint employees of the U.S. Federal Court.

(12) Miller, Narsuti & Miller, Lentz, Botchetto & Lentz, ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~, are attorneys practicing in the Commonwealth of Pennsylvania and at all times material to this complaint represented Schweitzer. They are sued in their personal and professional capacity.

(13) Conrad, O'Brian, Gellman, & Rohn, PC were at all times material to this complaint related to the employ of Aaron and Rohn/Rohr.

(14) John & Dianna Dunn were at all times material to this complaint individuals involved in the prosecution of the matter, and are sued in their individual capacity.

(15) Meehan, Burchill, Solicitor General, Attorney General were at all times material to this complaint attorneys for the United States.

F.     At all times material to this complaint, the defendants Todd and Plymouth Township were acting under the color of law, to wit, the statutes, ordinances, regulations, policies, customs and usages of the Commonwealth of Pennsylvania, the County of Montgomery, and/or Plymouth Township.

# C O M P L A I N T

001.   Schweitzer was convicted in the United States District
       Court, Eastern District of Pennsylvania and sentenced
       to fifteen [15] years imprisonment imposed under Title
       18 U.S.C. 4205(a), for violations of federal law defined
       by Title 18 U.S.C. 1001, [False Statements], and Title
       18 U.S.C. 1341, [Mail Fraud].

002.   Schweitzer was innocent of and was wrongfully convicted
       and incarcerated for these crimes.  Schweitzer's wrongful
       conviction and incarceration, combined with the continued
       reliance and use of this conviction is the proximate
       result of the acts and omissions of the defendants.

003.   In addition, the complaint charges that there exists a
       continuing conspiracy to deprive Leo F. Schweitzer, III
       of his right to petition for redress of grivances, his
       right to equal protection of law, and the continuing
       deprivation of liberty without procedural and substantive
       due process of law.

004.   The defendants, from 1985 through the present, inclusive,
       have used the judgment to exercise their authority,
       dominion and control as alleged in the following paragraphs.

005.   From December 1977 through 1983 Schweitzer was 100% owner
       of Alchemy, Inc. a Pennsylvania corporation and a defense
       prime contractor for the United States Department of Defense.

006.   As a result of actions, conduct and omissions of Depart-
       ment of Defense, [hereinafter DOD], agents, employees,
       and officials both known and unknown, Alchemy and Schweitzer
       suffered damage and harm which resulted in the filing of
       a Tort Claim for damages in excess of Four Million Dollars.

007.   The United states of America was represented by chief
       trial counsel, Alexander Younger, [hereinafter Younger],
       Assistant Attorney General, J. Paul McGrath, [hereinafter
       McGrath], and Director, DOJ, David M. Cohen, [hereinafter
       Cohen].

008.   As a direct and proximate result of the intentional,
       reckless, and/or negligent actions and omissions of the
       defendants, Alchemy was forced to file for reorganization,
       chapter 11 proceedings before the Eastern District of
       Pennsylvania, Bankruptcy Court, Docket # 83-02860G.

009.   At all times relevant to the period July 21, 1981 through
       August 1984, inclusive, the DOD was investigating and
       prosecuting under the authority of DOD Directive 1355.1,
       dated July 21, 1981, and in accordance with its Memorandum
       of Understanding, [MOU], between the DOD and the Department
       of Justice, [hereinafter DOJ], dated August 1984.

010.   The DOD's dominion and control over investigations and
       prosecutions via its Directive 1355.1 and MOU, provides
       for significant differences in both procedural and sub-
       stantive due process rights, and erosions of the First,
       Fourth, Fifth and Sixth Amendment rights guaranteed to a
       private citizen under the United States Constitution.

011.   The DOD was assigned a representative of the creditors
       in the bankruptcy action, and through its legal counsel,
       advised the bankruptcy court that it intended to cancel
       all open contracts and purchase orders with Alcmery and
       force the reorginazation proceedings into Chapter 7,
       Liquidation.

012.   Younger, McGrath, Cohen, and others known and unknown,
       instituted a scheme to damage, harm, destroy, and avoid
       liability relative to the damage claim.

013.   On or about April 19, 1983, a memorandum was prepared by
       and attorney in the Office of General Counsel, Defense
       Logistics Center, which set forth and memorialized the
       government's intent.

014.   It was the object and intent of the defendants to eliminate
       the multi-million dollar liability via debarment action
       and criminal indictment, neutralizing both the monetary
       liability and Schweitzer.

015.   At the direction of Younger, McGrath, Cohen, and others
       known and unknown, acting through the Office of General
       Counsel, and General Counsel for Defense Construction
       Supply Center, authorized and initiated a criminal invest-
       igation which was conducted by FBI Agent Robert, McKenney,
       [hereinafter McKenney], AUSA Bruce Chason, [hereinafter
       Chason], DCIS Agent Robert Koons, [hereinafter Koons],
       all of whom were operating out of the Eastern District of
       Pennsylvania, under the direction of Edward Dennis, United

States Attorney, [hereinafter Dennis].

016.    Schweitzer retained the law firm of Narsuti & Miller, and was represented by Jeffery Miller, [hereinafter Miller].

017.    After providing a full and complete disclosure of all the facts, circumstances and financial matters relating to the pending investigation, efforts which were ongoing from May 1983 through December 1983, culminated in an agreement between Dennis and Miller that the matter was to proceed as a civil issue.

018.    The investigating agents FBI McKenney, DCIS Coons and AUSA Chason, in concert of action with the Office of General Counsel, contrived to circumvent the resolution of the investigation by forcing the Eastern District's hand.

019.    On January 3, 1984, without any prior review or approval, as required by the Department of Justice, [hereinafter DOJ], rules, regulations and procedures, an indictment was drafted by AUSA Chason, FBI McKenney, and DCIS Coons, and upon their own authority it was presented to the grand jury, who returned a True Bill.

020.    The indictment, however, was defective upon its face, failing to alledge all the elements of the offenses charged under 18 U.S.C. 1001 and 1341.

021.    On January 4, 1984, news of the criminal action was publically released and carried by local and national media.

022.    Between January 1984 and March 1984, AUSA Chason was
        removed as the government's representative and also
        from the United States Attorneys Office.

023.    Throughout January 1984 and March 1984 the indictment
        was rebuffed and stale dated.

024.    On March 6, 1984, other Assistant United States Attorneys
        known and unknown, subsequently presented the same indictment
        which was now presigned by the United States Attorney
        Dennis.

025.    In an effort to obfuscate, conceal, misdirect, minipulate,
        and exercise undue influence over the Grand Jury, Agents
        KcKenney, Coons and AUSA Rohr / Rohn testified before the
        Grand Jury and vouched for the indictment, and induced
        the Foreman and the Jury to return a True Bill.

026.    The eighteen person Grand Jury returned the Bill within
        seven [7] minutes.

027.    Both the January 3, 1984 and the March 6, 1984 indictments
        were exactly the same, neither of which included all of
        the essential elements of the offenses charged under 18
        U.S.C. 1001 and 1341.

028.    From January 3, 1984 through June 24, 1984 in an effort
        to break the chain of attributable knowledge of the wrongs
        being committed, the government replaced several of the
        Attorneys handling the case, three [3] times.  The case
        being passed from AUSA Chason to AUSA Joanne Epps, [herein
        after Epps], and on to AUSA Marsha McClellan, [hereinafter
        McClellan].

029.   Throughout the period January 3, 1984 through June
       24, 1984, under the influence, direction, and managment
       of Younger, McGrath, Cohen, Meese, Dennis and
       McClellan and others in the Defense Logistics Agency
       known and unknown, As part of the defendants scheme,
       Schweitzer was deprived of his counsel of choice,
       Attorney Thomas Keenan, [hereinafter Keenan], stripped
       of the right to the attorney-client privilege relating
       to three individual Attorneys, Keenan, Douglas Johnson
       [hereinafter Johnson], and Sam Zaltman Gdanski, [here
       inafter Gdanski], and in further violation of rules,
       regulations, policies, and procedures, the United
       states by and through its agents compelled the att-
       orneys to testify against Schweitzer in the criminal
       trial.

030.   As a direct and intentional consequence of the defend-
       ants actions, Schweitzer was financially exhausted,
       and had to request Court Appointed Counsel, which
       resulted in the appointment of David Eishelman, [here-
       inafter Eshelman], as Schweitzer's legal counsel.

031.   Throughout the trial and in the government's case-
       in-chief, AUSA McClellan, FBI Agent McKenney, DCIS
       Agent Coons, knowingly and intentionally presented
       false and misleading evidence and testimony and failed
       to correct the misleading and false testimony while
       participating and maintaining the use of knowingly
       purjured testimony.

032.    Throughout the trial, Schweitzer was denied all
        opportunity to present his defense and "Theory of
        Defense," including his right to have the Defense
        Acquisition Regulations, [DAR], and integral part
        of the Contracts in question, introduced and testimony
        relating to their importance as it related to the legal
        effect, and the conduct of Schweitzer, the DAR's had
        the force and effect of law.

033.    On July 11, 1985, Federal Judge Daniel Huyett, III
        determined the critical "Materiality Element" of the
        offenses charged in the indictment, as a matter of law
        and specifically instructed the Jury that the element
        was established and was not before them to determine.

034.    Attorney Eshelman, entered a formal objection to the
        Court's determination of an element of the offense
        being determined as a "matter of law" and that
        Schweitzer was entitled to a jury determination of
        all elements of the offense, beyond a reasonable doubt.

035.    On July 12, 1985, the jury returned a question on the
        missing element, Eshelman again objected to the courts
        legal determination of an element of the offense and
        objected to any additional instructions, despite the
        objections the judge gave the jury an "Allen Charge"
        instructing that "if the mails were used, a crime had
        been established," directing a verdict.

036.    On July 13, 1985 the jury returned a guilty verdict.

037.    A timely request to poll the jury was also denied.

038.    The "Materiality Issue" was again raised in a "Motion
        For Judgment of Acquital," and included and again preserved
        the objection the the violation of Schweitzer's Fifth
        and Sixth Amendment Right to a jury determination of
        guilt of every element of the offense charged, beyond
        a reasonable doubt.  The motion was denied on September,
        9, 1985.

039.    Schweitzer was sentenced to a fifteen [15] year term of
        imprisonment under 18 U.S.C. 4205(a) and imposed restitution
        of approximately $500,000. dollars, payable to the DOD.

040.    Schweitzer retained private appellate counsel, Joseph
        Pizonka, Pizonka, Reilley & Bello, [hereinafter Pizonka],
        who again raised and preserved the Fifth and Sixth Amendment
        constitutional violations.  The Third Circuit without
        written opinion, denied review and relief at 800 F.2d 1141.

041.    In 1988 Schweitzer filed a "2255 Petition" relating to
        the 1985 void judgment and supplemented the filing with
        an affidavit of facts showing evidence of the Office of
        General Counsel and Defense Logistics Agency's involve-
        ment and manipulation of the criminal process.

042.    The evidence was docketed and entered into the record
        Docket Entry # 134, this entry was never transmitted to
        the Third Circuit Court of Appeals.

043.    Judge Juyett denied Schweitzer's "2255 Petition" on
        October 26, 1998.

044. From October 1985 through 1990 Schweitzer was in Federal Custody and was released on Parole in October, 1990.

045. From 1990 through 1994, Schweitzer was subject to the Parole Supervision which was supervised by Probation Officer Joshua Santana, [hereinafter Santana].

046. On or about January 19, 1994, Santana submitted a request for Schweitzer's release from parole supervision, as Schweitzer had successfully completed over thirty-nine [39] months of supervision without incident, and fully satisfying the commission's termination Guidelines of twenty-four [24] months by a factor of 160%.

047. Contrary to the Commission's own rules, regulations and procedures, on February 7, 1994, Regional Commissioner Simpson, [hereinafter Simpson], and others known and unknown, in direct contradiction with the Commissions rules refused a change in supervision status citing the United States money interest.

048. Schweitzer was never informed or privy to the Commissions additional comments relating "that based upon the res-titution obligation, an agreement with the United States Attorneys Office would allow a termination of supervision.

049. At all time relevant to these actions, from January 22, 1985 through the present, the DOD was investigating and prosecuting under the sole authority of its DOD Directive 5525.7, entitled Memorandum of Understanding [MOU] between the DOD and the DOJ.

# A C T    T W O

## A T T R I B U T A B L E

## K N O W L E D G E

## 1 9 9 5

## I N   R E   W I N S H I P

## G A U D I N   V.   U N I T E D   S T A T E S

050.  On or about January 24, 1995, Schweitzer was arrested
      on a criminal complaint filed by FBI Agent McKenney,
      and others working for the DOD.

051.  Following a course of action and plan to induce a con-
      vicion, Schweitzer' bid for bail was intentionally twarted
      by FBI Agent McKenney, AUSA Goldburg, [hereinafter
      Goldberg], and DOD Agents, known and unknown,  when they
      falsely advised the Magistrate Judge that a Parole Vio-
      lator Warrant based upon the 1985 void judgment would be
      lodged against Schweitzer, and viciate the bail.

052.  Schweitzer was denied bail as a result of the misrepre-
      sentation to the judge, the parole violator warrant would
      have been removed and held in abeyance.

053.  The actions were done under the color of law with the
      intent to apply coercive pressure, circumvent legal
      rights and to discourage Schweitzer's constitutionally
      protected right to Trial.

054.  At all times material to these events and to the bring-
      ing of the complaint, arrest warrant, and parole revocation
      warrant and proceedings, FBI Agent McKenney, DOD Agents,
      and AUSA Goldberg, provided sworn Affidavits of Probable
      Caused, which relied upon and bootstrapped their information
      based upon the 1985 void judgment.

055.  At each and every apperance before Members of the Judicial
      Branch, the Executive Branch, by and through its agents,
      the above defendants, and others known and unknown, caused
      or induced the judicial representatives to rely upon,

act under the color of law, and to execute processes and procedures which affected Schweitzer's Constitutional Rights, causing damage and harm.

056. Schweitzer was detained under circumstances and in locations which were contrary to normal practice and procedure, He was detained at Homesburg Prison in lieu of detention at a federal facility. Homesburg Prison was a extremely violent, dangerous, and hostile place with conditions which were nothing less than horrific. The purpose and intention of the defendants was to induce and coerce a guilty plea and to discourage the exercising of Schweitzer's Constitutional Right to trial.

057. The defendants, and others known and unknown maintained their coercive conduct in excess of 286 days, with the full knowledge and aid of the United States Marshalls, [hereinafter US Marshalls], and the AUSA Goldberg.

058. Above named defendants, and others known and unknown, maintained coercive actions designed to coercively chill Schweitzer rights, and with the express intent to discourage a trial, threatened Schweitzer with the indictment of the Mother of his Child, Micah Schweitzer and his Sister in Law, Kim Levengood, unless he forego a trial and enter a plea agreement.

059. Schweitzer was represented by Court Appointed Counsel, Gavin Lentz, Botchetto & Lentz, [hereinafter Lentz], who after reviewing the criminal complaint advised Schweitzer that the charges were for unpaid bills, and amounted to

nothing more than "State Law Breach of Contract."

060. Schweitzer insisted that the defendants and the federal government bring an indictment.

061. The government charged conduct via indictment,which while detrimental to Schweitzer, it provided protections for his Family.

062. Despite the indictment, the defendants continued to use Schweitzer's Family as coersion and added the additional threat of indicting Schweitzer's Father.

063. With grave concern for the Mother of his Child, his Sister in Law, and his Father, all of whom were Defense Prime Contractors,and who made their livelyhood via the DOD, Schweitzer acquised and accepted to entering a Plea Agreement to assure the safety of his Family.

064. Schweitzer entered a change of plea in the Eastern District of Pennsylvania, before Judge Newcommer, [hereinafter Newcommer], proof of the defendants coersive threats and the assurances for the safety of Schweitzer's Family were memorialized in open court and in writing, along with the governments agreement as to a twenty-seven to thirty-three month term of imprisonment, [27 to 33].

065. Schweitzer's plea agreement was accepted and Allentown Office United States Probation Officer, Donald Miller, [hereinafter D, Miller], was assigned to complete a pre-sentence investigation and compile a Pre-Sentence Report.

066.   On August 21, 1995, USPO D. Miller presented his
       original draft of the Pre-Sentence Report which reccom-
       ended enhancments based upon "criminal history" and
       increased "offense levels" for being subject to a
       criminal justice sentence, [1985 void judgment].

067.   Between January 1995 and August 21, 1995, inspite of
       being detained at Homesburg Prison, Schweitzer became
       aware of the United States Supreme Court's Decision
       in Gaudin v. United States, which was argued April 17,
       1995 and was decided on June 19, 1995.

068.   The Supreme Court's decision in Gaudin, acknowledged and
       vindicated Schweitzer's legally preserved assertion that
       the 1985 judgment and conviction was a directed verdict,
       not constitutionally obtained, relying upon In Re Winship,
       (1970) and Sandstrom v. Montana (1979). Even more it could
       be shown by a facial review of the record.

069.   Schweitzer raised the objection and specifically the
       Gaudin decision before Judge Newcommer, placing the matter
       squarely before the court and objecting to the use of the
       1985 conviction for any purpose, including enhancments.

070.   As a result of the objections and filings of Schweitzer's
       written support along with disputes with the Allentown
       USPO Miller, sentencing was halted and re-scheduled
       several times.

071.   The defendants voiced strenuous objection to the intro-
       duction of the Gaudin Issue, it eviscerated their entire

case, and struct to the core of probable cause, un-
lawfully obtained convictions, and the defendants
use of a federal judgment known to be fundamentally
void.   Gaudin was law applicable to the proceedings.

072.   Judge Newcommer refused to hear Schweitzer's objections
and defense, unless it was submitted in writing, Judge
Newcommer again postponed the sentencing.

072.   Gaudin v. United States was decided on June 19, 1995,
the Supreme Court heard the parties arguments several
months before June 1995, the United States, and the def-
endants had constructive knowledge of the decision as
early as January 1995, known or should have known of
the collaretal consequences of the decision, despite
such knowledge or in the alternative, acting on such
knowledge acted with intent to preempt the government's
liabilities and protect its prior judgments.

073.   Schweitzer's court appointed counsel, Lentz, refused to
file and argue the Gaudin Decision, specifically stating
that he was not being paid to argue this defense, he was
simply representing Schweitzer on entering a plea.

074.   Schweitzer fired lentz for failure to bring a legimate
objection and defense on his behalf, Schweitzer noticed
the court, Judge Newcommer by "certified mail" of the
firing and the events leading to the action.

075.   At the next scheduled sentencing hearing, the events of
Lentz's firing were noticed argued and finally acknowledged
by Judge newcommer.

076.    Schweitzer, in want of counsel, filed with the court,
a motion entitled - "Writ of Error Coram Nobis," which
raised and preserved the Gaudin Decision and its app-
licability, timeliness, and the obvious objection to
any further use of the 1985 void judgment, for any
purpose, current or in the future.

077.    The defendants, and all of them, argued to the court
to defer any consideration of the Gaudin defense, in
a conscious effort to protect its now vulnerable "Case
-in-Chief" and its prior 1985 judgment, which has now
been shown to have been constitutionally unsound, and
facially void, and inherently unreliable for purposes
of probable cause, or for sentencing enhancment purpose.

078.    The court refused to consider Gaudin, which was at the
time of the proceedings, applicable law, both in its
relation to sentencing and to the use of the 1985 void
judgment.

079.    The Gaudin Decision, and its applicable law, was raised,
preserved, relevant, and the issue ripe and perfected,
before a federal court, within months of the Supreme
Court's rendering of the decision.

080.    AUSA Goldberg, FBI Agent McKenney, and the DOD's agents,
the defendants, and all of them, directly had attributable
knowledge of the matter, law, and its applicability.

081.    The defendants knowingly harmed Schweitzer.

082.    Attorney Lentz failed to protect Schweitzer, failed to
properly investigate the prior conviction, and failed to
zealously champion Schweitzer's consitituional rights.

083.    On November 7, 1995, the court failed to address the
        Gaudin Issue, and imposed an enhanced sentence of
        forty-one [41] months imprisonment.

084.    Schweitzer was told to take the matter up with Judge
        Huyett, the original sentencing judge.

085.    Schweitzer filed a "Notice of Appeal" of the denial
        of review and the application of enhanced punishment,
        and "Notice of Appeal" of the denial of the "Writ of
        Error Coram Nobis."

086.    Between January 1995 and November 1995, Schweitzer was
        incarcerated, denied bail, housed in one of the regions
        most coercive envinorments, threatened, coerced with the
        very real spectre of retribution upon his Family, burdened
        by appointed counsel who refused to remain a zealous ad-
        vocate, for financial reasons and others,  chastized and
        denied redress of law by the defendants.

087.    The actions, conduct, and omissions of the defendants
        violated the rights of Leo F. Schweitzer, III, under the
        First, Fourth, Fifth, Sixth, Eight, Ninth, Tenth, Thirteenth,
        and Fourteenth Amendmnets to the United States constituition.

088.    As a direct and proximate result of the intentional,
        reckless, and/or negligent actions and omissions of the
        defendants, as set forth above, Leo F. Schweitzer, III,
        was and continues to be deprived of his Liberty, deprived
        of his right to freedom of speech and to petition the
        government for redress of grivenances, denial of his

rights to Equal Protection of law, deprived of his
Liberty without procedural and substantive due process
of law, denied a fair trial, subjected to cruel and
unusual punishment, subject to coercive pressure in-
tended to circumvent and discourage the exercise of
the right to trial, and required to expend life and funds
of legal defense.

089.    The defendants, and all of them, through their acts,
omissions, and  agendas continue to pursue a course of
action designed to deny, deteriate, and subjugate the
right to trial under the Fifth and Sixth Amendments of
the United States Constitution, Bill of Rights, and
the Constitution of the Commonwealth of Pennsylvania,
Schweitzer incorporates the "Affidavit for Cause of
Action/Complaint - 1985 Judgment, herein as if set forth
paragraph for paragraph, and made part of this complaint
designated "Attachment'B'."

---

# A C T   T H R E E

---

## W R I T   O F   E R R O R

## J U D G E   H U Y E T T

---

---

## S U B S T I T U T I O N   O F

## U N I T E D   S T A T E S

## A T T O R N E Y   A A R O N

---

090.   On November 30, 1995, upon instruction of Judge Newcommer,
       Schweitzer filed the "Writ of Error Coran Nobis" in the
       United States District Court, Reading, Pennsylvania, before
       Judge Huyett, the matter was docketed at # 84-0097.

091.   There was no response by the government, nor the District
       Court.

092.   As the duty of the moving party was to move the action
       forward, between December 1995 and January 1996, Schweitzer
       motioned the Clerk of Court, under Federal Rule of Pro-
       cedure, Rule 55(a), Default, to notice the parties failure
       to respond, to enter a default, and to close the record.
       the Default was entered.

093.   Members of the Eastern District's United States Attorneys
       Office, known and unknown, having knowledge of the 1995
       proceedings before Judge Newcommer assigned the "Coram
       Nobis Action", not to the prosecuting attorney, AUSA Gold-
       berg, but in an effort to break the chain of attributable
       knowledge of the wrongs being committed, again followed
       the same course of action inplemented in 1984, and passed
       the case to a different AUSA.

094.   Despite the record being closed and the existence of a
       valid Default, Judson A. Aaron, [hereinafter Aaron],
       an attorney who, depending upon circumstances, either
       worked for Conrad, O'Brian, Gellman, and Rohn, P.C. or
       as an AUSA, filed what was represented to be a "Courtesy
       Copy" of the government's response in an effort to cir-
       cumvent the Default and urge the Court to again fail to

act, and on behalf of the defendants and the United
States, to protect the 1985 void judgment from review.

095.    Aaron's Courtesy Copy Response, was filed on February 16,
1996 and on March 21, 1996, Judge Huyett acknowledged
the applicability of the Supreme Court's Gaudin Decision,
but failed to grant relief from the void judgment.

096.    The actions, conduct, and omissions of the defendant's
violated the rights of Leo F. Schweitzer, III, under the
First, Fourth, Fifth, Sixth, Eight, Ninth, Tenth, Thirteenth,
and Fourteenth Amendments to the United States Constituition.

097.    As a direct and proximate result of the intentional,
reckless, and/or negligent actions and omissions of the
defendants, as set forth above, Leo F. Schweitzer, III
was and continues to be deprived of his Liberty, deprived
of his right to freedom of speech and to petition the
government for redress of grivences, denial of his rights
to Equal Protection of Law, deprived of his Liberty with-
out procedural and substantive due process of law, denied
a fair trial, subjected to cruel and unusual punishment,
subject to coercive pressure intended to circumvent and
discourage the exercise of the right to trial, and required
to expend life and funds for legal defense.

098.    The defendants, and all of them, through their acts,
omissions, and agendas continue to pursue a course of action
designed to deny, deteriate, and subjugate the right to
trial under the Fifth and Sixth Amendments of the Constitution,
Bill of Rights, and the Constitution of Pennsylvania.

A C T      F O U R

T H I R D      C I R C U I T

A P P E A L S

C R I T I C A L      C I R C U M V E N T I O N

S U M M A R Y      A C T I O N S

C L E R K S    /    C A S E      M A N G E R S

099.    Between January 1995 and April 1996, Schweitzer appealed
        every denial by Judge Newcommer, relating to the 1995
        imposition of sentence, Newcommer's refusal to hear the
        petition raising the <u>Gaudin</u> Decision, and the use of the
        1985 void judgment for enhancment purposes; Schweitzer
        also appealed each and every denial by Judge Huyett,
        relating the the "Coram Nobis Petition" raising the <u>Gaudin</u>
        Decision proper, the government's response in the face of
        a closed record, and circumvention of a Default.

100.    The matters were docketed before the Third Circuit at
        Docket(s) Numbers : 95-1977; 95-2010; 95-2015; 96-1016;
        96-1296; 96-1392.

101.    The appeals were subject to appellate procedures which
        provided for pre-screening and visual identification
        based upon "Pro Se Status" and as a result, were specially
        identified, and in the majority of the cases subject to
        discrimination by class, and subjected to "Summary Action"
        and less favorable consideration as a result of "Pro Se"
        representation.

102.    Schweitzer's appeals were docketed and because of his
        "Pro Se" status, the appeals were subject to classification,
        review, and filtering by Deputy Clerks, Case Managers,
        Staff Attorneys, Supervising Staff Attorneys, everyone
        but Article Three Judges, as required by the Constitution.

103.    Schweitzer's appeal relating to Judge Huyetts' denial of
        the Writ of Error Coram Nobis, was originally assigned to
        AUSA McClellan, the original AUSA on the 1985 case, but

was re-assigned to AUSA Aaron by Debra L. Ruh, Deputy
Clerk.

104. Appeal # 96-1392 was listed for summary action, sua sponte
by Elizabeth A. Cormier, [hereinafter Cormier], on May
14, 1996.

105. Between April 1996 and March 1997, each and every
attempt at redress was met with an obstacle designed to
circumvent, or in the alternative, designed to raise the
level of procedures to a height that an incarcerated,
"Pro Se Litigant" would be unable to obtain.

106. Throughout the period April 1996 to March 1997,
Schweitzer was subjected to tactics which included cir-
cumvention of legal mail, stale dating of correspondance,
and mail screening, by the Bureau of Prisons, [hereinafter
BOP], while incarcerated at LSCI Allenwood.

107. Several of the tactics and interventions were documented
and complained about to Chief Judge Sloviter in correspondance
dated July 10, 1996 and July 17, 1996, and sua sponte
answered and denied by the Court's Clerk, P. Douglas Sisk.

108. Between April 1996 and March 1997, the Third Circuit's
clerks, case managers, and staff attorneys, known and
unknown, intentionally or unintentionally created a sub-
stantive and procedural denial of due process.

109. The actions, conduct, and omissions of the defendant's
violated the rights of Leo F. Schweitzer, III, under the
First, Fourth, Fifth, Sixth, Eight, Ninth, Tenth, Thirteenth,

and Fourteenth Amendments to the United States Constitution.

110.  As a direct and proximate result of the intentional, reckless, and/or negligent actions and omissions of the defendants, as set forth above, Leo F. Schweitzer, III was and continues to be deprived of his Liberty, deprived of his right to freedom of speech and to petition the government for redress of grivences, denial of his rights to Equal Protection of Law, deprived of his Liberty without procedural and substantive due process of law, denied a fair trial, subjected to cruel and unusual punishment, subject to coercive pressure intended to circumvent and discourage the exercise of the right to trial and to appeal, and required to expend life and funds for legal defense.

111.  The defendants, and all of them, through their acts, omissions, and agendas continue to pursue a course of action designed to deny, dtereiate, and subjugate the right to trial and appeal under the First, Fifth and Sixth Amendments of the Constitution, statutes and laws of the United States, Bill of Rights, and the statutes, laws, and Constitution of the Commonwealth of Pennsylvania.

---

# A C T    F O U R

---

## M I D D L E    D I S T R I C T

## H A B E A S    A C T I O N S

---
---

### E X E C U T I O N    O F    S E N T E N C E

### 1 9 9 5 - E N H A N C M E N T S

### 1 9 8 5 - S E N T E N C E    C R E D I T S

---

112.   Throughout the period 1996 through 1997, Schweitzer
       in an abundance of caution for the continued welfare
       of his Family, Schweitzer abandoned any further attempts
       at redress in the Eastern District of Pennsylvania.

113.   In 1996, Schweitzer filed a Habeas Petition attacking
       the execution of the 1995 imprisonment based on the
       government's enhancment using the 1985 void judgment
       in the Middle District of Pennsylvania at 96-CV-1550,
       relief was denied on procedural grounds.

114.   On appeal of the denial of the Habeas Petition, the
       Third Circuit, Judges Sloviter, Mansmann, and Alito,
       denied appelate relief but cited that relief could be
       address via a "2255 Petition." Docketed at #97-7250.

115.   Schweitzer retitled the petition and filed it before
       Judge Huyett. There was no response.

116.   The response to Schweitzer's continued attack on the
       the 1985 void judgment was signaled loud and clear,
       and manifested in the BOP's attempt at imposing a
       forty-eight [48] month additional term of imprisonment,
       via its failure to grant "sentence time credit" against
       the 1985 parole revocation which came as a result of the
       1995 conviction.

117.   Schweitzer filed a Motion for Declaratory Judgment/ Habeas
       in the Middle District challenging the failure to credit
       time as provided for by 28CFR2.47(e)(1).

118.   Schweitzer was subjected to "shuttling" desguised as a stale
       local charge while briefing his appeals regarding the 1985
       void judgment.

---

A    C    T        F    I    V    E

---

S    H    U    T    T    L    I    N    G

F    B    I    A    G    E    N    T    McKENNEY

D    E    T    E    C    T    I    V    E    B    R    I    A    N    T    O    D    D

A    U    S    A    A    A    R    O    N

---
---

V    I    O    L    A    T    I    O    N    S

A    P    P    E    L    L    A    T    E    R    U    L    E    2  3  (a)

---

119.  During the pendency of the direct appeals listed in
      paragraph 100 of this complaint, Schweitzer was shuttled
      and removed to the Montgomery County Correctional
      Correctional Center to be arraigned on charges
      who nexis was based upon the 1995 federal charges
      and FBI Agent McKenney.

120.  Detective Brian Todd, [hereinafter Todd], a Plymouth
      Township employee and others known and unknown, filed
      an "Affidavit of Probable Cause" which specifically
      relied upon  FBI Agent McKenny and the 1995 federal
      charges, to press his complaint.

121.  As a direct and proximate result of the intentional,
      reckless, and/or negligent actions and omissions of
      defendants Todd, McKenney, and AUSA Aaron and Goldberg,
      Plymouth Township and the State of Pennsylvania under
      the color of law became the proximate cause of an
      intentional circumvention and obstruction of access to
      the federal appelate court, when under color of legal
      process and procedure, the defendants perfected a transfer
      of Schweitzer during a critical stage of the appellate
      proceeding, to wit; #  95-1977; 95-2010; 95-2015; 96-1016;
      and 96-1392, placing Schweitzer in a controlled situation,
      obstructing and impeding the Appellate Courts Scheduling
      Orders, Schweitzer's Brief's and Response Motions, causing
      and circumventing Appellate review of critical stages of
      Schweitzer's presentation of the Gaudin decision and errors.

122.  No Order or Permission from the Appelate Court as required
      pursuant to Appellate Rule of Procedure 23(a),

was requested or granted.

123. The actions, conduct and omissions of the defendants violated the rights of Leo F. Schweitzer, III under the due process clause, the equal protection clause, and the First Amendment, Privileges and Immunities Clause of Article Iv of the Constitution, and the rules, statutes, of the United States and the rules, statutes, and protections of the Pennsylvania Constitution, along with the rules, regulations, policies, procedures of Montgomery County and Plymouth Township, Pennsylvania.

124. The defendants, and all of the, had or should have had direct, constructive, or certain knowledge of the constitutional infirmity of the 1985 void judgment, and through a course of conduct which may be inferred through their acts, omissions, inactions and actions, to ensure the circumvention of review and relief, knowledge of the wrongs being committed may be proved.

125. At all times material to this complaint, the defendants were acting within the scope of their employment, under the direction and authority of others, known and unknown, and under the color of law, to wit, the statutes, ordinances, regulations, policies, customs, usages, and /or directives of the United States, Commonwealth of Pennsylvania, Montgomery County, and Plymouth Township.

126. At all time relevant to the above acts, the defendants were obstructing the proper administration of justice, procedural and substantive due process and judicial review.

127. From January 1997 through February 1997 was critical.6TT to the pending Applals.

128.  On January 20, 1998, the USPC issued a "Confirmation
      Letter" that the comission via its decision to impose
      a forty-eight [48] month punishment for violation conduct,
      was calculating Schweitzer's incarceration date from
      January 24, 1995, and as of January 24, 1998, the Comm-
      ission would credit Schweitzer with 36 months of in-
      ceration.

129.  In February 1998, the parole violator warrant was removed
      and Schweitzer was transfered to Lewisburg Satellite Camp.

130.  As a result of the sentencing time credit debuncle,
      Schweitzer had served from January 24, 1995 through his
      final release on February 23, 1999, in excess of forty-
      eight [48] physical months of incarceration, and the BOP
      failed to credit the 48 months along with statutory good
      time credits in excess of 480 days, totaling a failure
      to credit against the 1985 void judgment in excess of
      a total of one hundred - eight [108] total months of in-
      carceration between 1985 through 1998, against a 180
      month sentence.

131.  Schweitzer was released to CCC Placment on September 17,
      1998.

132.  After successfully completing several months of CCC placment,
      Schweitzer's final release paperwork was submitted to the
      local US Probation Office, Allentown, Pennsylvania, [here-
      in after Allentown Probation Office], whereupon Sally
      Keglovits, supervisor of D.Miller, USPO took exception
      to Schweitzer's jobb and choice of living locations.

133.    As a direct and proximate cause of Keglovits and D.Miller
        Schweitzer's release plan was rejected, he received an
        incident report from Kintock Halfwayhouse, his release
        date was recended and Schweitzer was placed back in
        federal custody, now designated to FCI Farton.

134.    Keglovits and D. Miller were exercising their authority
        under the 1985 void judgment to re-incarcerate Schweitzer.

135.    As a direct and proximate result of these decisions,
        Schweitzer lost his home, all his personal property, his
        newly established relationship with his Daughter, Micah
        Schweitzer, and his liberty.

136.    Schweitzer was re-released on February 23, 1999.

137.    At all times relevant to the period February 23, 1999
        throught December 2001, the Allentown Probation Office,
        USPO Agents Sally Keglivots, [hereinafter Keglovits],
        Donald Miller, [hereinafter D.Miller], and Christopher
        Mauhn, [hereinafter Mauhn], operated, supervised, and
        managed the Allentown Probation Office, Michael Santella,
        [hereinafter Santella], was their direct reproting super-
        visor, operating out of Philadelphia, Pennsylvania.

138.    Keglovist and Mauhn were transfered from the Boston Area
        to the Allentown Probation Office.

139.    Overall supervision responsibility for Keglovits, D. Miller,
        Mauhn, and Santella was the responsibility of Gail White
        Agbugui, [hereinafter Agbugi].

140.    Throughout the period December 1998 through December 2005,

140.  Keglovits was assigned direct supervision over Schweitzer, as D. Miller through the events stemming from the 1995 attempts to enhance punishment and to avoid review of the 1985 void judgment, along with D. Miller's attributable knowledge of the matters resulted in his reclusal.

141.  Between December 1998 through 2005, keglovits, Mauhn, and Santella, and others both known and unknown, harmed Schweitzer by extending approvals and receding approvals, after Schweitzer acting in good faith upon such approvals, such acts resulting in Schweitzer's being placed in controlled situations and minipulated, causing Schweitzer damage and harm.

142.  The defendants, acting within the scope of their job function, participated, directed, or otherwise took actions which violated, rules, regulations, policies, procedures, and laws, when they caused or performed the acts contained in the "Verified Affidavit for Cause of Action/Complaint of Leo F. Schweitzer, III, dated January 31, 2004, and incorporated herein as if set forth paragraph for paragraph, incorporated and made a part of this complaint, designated "Attachment 'A'."

143.  The defendants, through their actions, inactions, and dominion and control of Schweitzer caused the following acts:

      (a)  granting approvals to lease vehicles linked to restitution, denying the authorizations and causing the cancel-ation of said leases resulting in losses in excess of $36,500.

(b)  interfering with custody and visitation
     rights.

(c)  pressuring and extracting restitution
     using collection techniques, terms, and
     contitions violative of federal law.

(d)  personally upon their own authority,
     terminating apartment leases pre-
     voiusly approved and causing losses
     of personal property and funds:
     (1) 1600 Legigh Parkway - 12/98
     (2) 535 Main Street    - 12/01

(e)  interfering with Domestic Relations
     and Child Support payments, causing
     arrerages, damages, and minipulation
     of local officials.

(f)  institution revocation proceedings
     without probable cause and relying
     upon knowingly false information
     to acheiva improper, illegal objectives.

(g)  maintaining dominion and control over
     Schweitzer, in the face of personal
     personal and professional conflicts of
     interest.

(h)  exerting undue, inappropriate, and
     self-serving influence upon factual
     matters before Federal Judicial Tribunals
     and under sworn oath.

(i)  circumventing, covering up, and participating
     in illegal acts to cause damage and harm
     to individuals under their control.

144.  The defendants, and all of them, under the color of law,

      and in concert with others, known and unknown, and in-

      particular, the DOD, DOJ, FBI, NCIS Agents, acted to

      harm Schweitzer.

145.  The actions, conduct, and omissions of the defendant's

      violated the rights of Leo F. Schweitzer, III, under the

      First, Fourth, Fifth, Sixth, Eight, Ninth, Tenth, Thirteenth,

and Fourteenth Amendments to the United States Constitution.

146. As a direct and proximate result of the intentional, reckless, and/or negilgent actions and omissions of the defendants, as set forth above, Leo F. Schweitzer, III was and continutes to be deprived of his Liberty, deprived of his right to freedom of speech and to petition the government for redress of grivences, denial of his rights to Equal Protection of the Law, deprived of his Liberty without procedural and substantive due process of law, denied a fair trial, subjected to cruel and unusual punishment, subject to coercive pressure intended to circumvent and discourage the exercise of the right to trial and to appeal, and required to expend life and funds for legal defense.

147. The defendants, and all of them, through their acts, omissions, and adgendas continue to pursue a course of action designed to deny, deteriate, and subjugate the right to trial, appeal and redress, under the First, Fifth, and Sixth Amendments of the Constitution, statutes and laws of the United States, Bill of Rights, and the statutes laws, and Constitution of the Commonwealth of Pennsylvania.

148. The defendants, conspired to use the 1985 void judgment to exercise authority, dominion and control over Schweitzer from January 1995 through the present, and while acting on or upon behalf of the United States.

149. The acts of the defendants and all of them constitute a continuing course of action in degration of Schweitzer's rights.

---
# A C T   S I X
---

## D O D   &   K E G L O V I T S

## O V E R T   A C T S

---
---

## D O M E S T I C   R E N D I T I O N

## C O E R S I O N   /   D U R E S S

## R I G H T   T O   T R I A L

---

150.    On December 6, 2001, Keglovits, acting with or in
        conjunction with DCIS Agents, known and unknown, and
        FBI Agents, McKenney, William Alone, [hereinafter Alone],
        William Evans, [hereinafter Evans], Stephen Ford, [here
        inafter Ford], and other agents both known and unknown,
        requested from the US Parole Commission a "Warrant Re-
        quest" for Schweitzer, the authority for the request
        was the 1985 void judgment.

151.    Keglovits and the above named Agents, along with AUSA
        Christopher Hall, [hereinafter Hall], persuaded the
        parole commissions case analysts, known and unknown,
        to issue and arrest warrant for breaches of Schweitzer's
        parole conditions, to with, leaving the state in August
        2001, for a 3 day vacation in Rhode Island, when in truth
        and in fact, the request was a ruse.

152.    On December 12, 2001 a warrant issues and Schweitzer was
        arrested outside the office located at 1600 Lehigh Park-
        way, Allentown, Pennsylvania.  Schweitzer was detained,
        cuffed and physically ussered into the building and into
        the office.

153.    Schweitzer was transported to the US Marshalls holding
        cell in the Federal Courthouse, Allentown, Pennsylvania.

154.    In conjunction with the warrant arrest, Keglovits and
        goverment Agents seized the contents of the office and
        the computer, and effectively shutting down the Satellite
        Company of America.

155.    After receiving a Probable Cause Hearing Schweitzer was
        found not guilty of the offense and released in March 2002.

156.    Through March 2002 to july 2003, a period in
        excess of sixteen [16] months, Schweitzer was again
        subject to Keglovits supervision.

157.    During this period, and as a direct result of having
        seized the records and computer in the Satellite
        Companies Offices, Keglovits and the DOD, FBI, NCIS
        and AUSA Hall were investigating and attempting to
        create a criminal action using the information from
        the seized records.

158.    Schweitzer's partner, - [ Active Duty Military],John
        Dunn, [hereinafter Dunn], and Keglovits had started the
        proceedings with the proviso that Dunn would be protected
        from prosecution, allowed to retire from active duty,
        collect he pension, and for such renumeration Dunn would
        lay the blame on Schweitzer, a known felon and persona
        non grata within the defense establishment.

159.    Agents of the NCIS, known and unknown, were interested
        in protecting one of their own in exchange for parlaying
        a prosecution of Schweitzer.

160.    The government agents were also willing to overlook the
        fact that a large portion of the monies owed to Schweitzer
        and the Satellite Company where receivables which Dunn
        through his Wife, Deanna Dunn, [hereinafter D. Dunn],
        owned on his behalf, and from Dunn's Father and Mother,
        who also owed receivables to Schweitzer and Satellite.

161.    Between March 2002 and July 2003, Schweitzer and his counsel Jeffery Miller disclosed to the government the nature of the events, the financial obligations and ties of the parties, and reiterated the full and open disclosure given to USPO Keglovits before entering into the business relationships relating to Dunn's defense contracting activities and Schweitzer's providing supplies.

162.    In a continuing effort to protect and hold harmless its agents, employees, and active duty military participants, AUSA Hall charged and returned an indictment against Schweitzer and Dunn.

163.    Dunn entered a guilty plea at arraignment.

164.    Schweitzer was arraigned, pled not guilty and was released on O/R Bail the same day.

165.    Keglovits became outraged at Schweitzer having been granted bail, and exercising her authority under the 1985 void judgment, submitted another "Warrant Request" for the arrest of Schweitzer. As a result a "Parole Violator Warrant" issued.

166.    On August 8, 2003, Schweitzer again self-surrendered to the U.S. Marshalls.

167.    On August 27, 2003, Schweitzer met with USPO Joseph Ridgway, [hereinafter Ridgway], and a Preliminary Interview was conducted, the hearing was postponed until September 9, 2003 so Schweitzer's counsel J. Miller, could appear on his behalf.

168.    The Hearing Office Ridgway determined "probable cause" as to each of the charges based on

as to each of the charges based on the information
outlined in the indictment filed by the U.S.Attorney.

169.    There was no finding of probable cause relating to
the technical violations, the report was approved by
David L. Litwin, [hereinafter Litwin], supervising
USPO, Philadelphia.

170.    As a result of the September 11, 2003 Report, the
Parole Comission scheduled a hearing to determine
the status of the matter and the request for the
warrant to be held in "abeyence" until the outcome of
the criminal matter, the hearing was scheduled for
November 3, 2003.

171     On October 29 through October 30, 2003, the U.S. Marshalls
attempted to transfer schweitzer from the FDC Philadelphia
where his hearing would be held to Lehigh County Prison.

172.    Schweitzer advised the U.S. Marshall, known and unknown,
of the hearing, and after verification, the transfer
was cancelled for that day.

173.    On November 3, 2003, despite full knowledge of the
pending parole hearing scheduled for 10:00 AM, the
U.S. Marshalls, known and unknown, transfered Schweitzer
to avoid the hearing, Schweitzer was transported to
Lehigh County Prison, Allentown, Pennsylvania.

174.    On November 4, 2003 the United States District Court
Allentown, Pennsylvania, Judge Gardner, held a hearing
relating to Schweitzer's Motion to Suppress Search,

and Motion to Strike Surplusages from the Indictment.

175. During the hearing, Schweitzer's counsel, J. Miller, refused to call critical wittnesses, Keglovits and FBI Agent McKenney, and refused to subject the governments motives to cross examination, Miller refused to subject the "Affidavits of Probable Cause" submitted by the Federal Agents to Magistrate Judge Welsh, to review of cross-examination.

176. The "Affidavits of Probable Cause" contained information based upon the 1985 void judgment and 1995 judgment and simply "bootstrapped" probable cause to justify search warrants to issue, or other defects which could not be disclosed or cross-examined due to Miller's failure to call witnesses.

177. Schweitzer was detained at Lehigh County Prison.

178. The Parole Comission rescheduled Schweitzer, hearing for December 1, 2003 to be held at the FDC Philadelphia.

179. Schweitzer was intentionally refused transfer to the December 1, 2003 hearing, the U.S. Marshalls intentionally at the behest of Keglovits and upon her authority delayed Schweitzer's arroval to circumvent the hearing.

180. Schweitzer was being subject to "domestic rendetion" and "shuttling" a procedure practiced by agents and the U.S. Marshalls to ensure circumvention of administrative and Judicial relief from detention. Keglovits, US.Marshalls, and all the above named defendants were participating in the acts of "domestic rendition."

181.    On or about December 9, 2003, as a result of the
        defendants conduct and practice of "domestic rendition,"
        Schweitzer served an "Affidavit for Cause of Action/
        entitled "Illegal Shuttling" and served the following:

      (a)   Judge Gardner, Allentown, Pa.
      (b)   Attorney Jeffery Miller
      (c)   AUSA Hall
      (d)   Teah Wedlock, USPC
      (e)   U.S. Marshalls, Allentown, Pa.

        Schweitzer incorporates the "Shuttling Affidavit" of
        Leo F. Schweitzer, III, dated December 8, 2003, herein
        as if set forth paragraph for paragraph, and made part
        of the complaint designated "Attachment 'C'."

182.    From August 2003, through March 2004, Schweitzer was
        subject to "Domestic Rendetion" for the purpose of
        maintaining absolute dominion and control over him,
        using coercive, threatening actions, physical restraint,
        incarceration, and arbitrary, capricious conduct, being
        applied in a surreptitious and covert manner, for the
        purposes of inducing a plea of guilt, and in degradation
        of Schweitzer's Constitutional right to Trial.

183.    At all time relative to the above conduct, the Agents
        of the United States, were exercising their authority,
        investigating, and prosecuting Schweitzer under the
        authority and understanding contained in DOD Directive
        5525.7, and in accordance with its Memorandum of Under-
        standing, [MOU] between the DOD and DOJ, dated August
        1984.

184.   The DOD's dominion and control over investigations
       and prosecutions via its Directive 5525.7 and MOU,
       provides for significant differences in both pro-
       cedural and substantive due process, and erosions
       of the First, Fourth, Fifth, Sixth, Eight, Ninth,
       Tenth, Thirteenth, and Fourteenth Amendments to the
       United States Constitution.

185.   As a direct and proximate result of the intentional,
       reckless, and/or negligent actions and omissions of the
       defendants, as set forth above, Leo F. Schweitzer, III,
       was and continues to be deprived of his Liberty,
       deprived of his right to freedom of speech and to petition
       the government for redress of grievances, denial of his
       rights to Equal Protection of Law, deprived of his
       Liberty withoutprocedural and substantive due process
       of law, denied a fair trial, subjected to cruel and
       unusual punishment, subject to coercive pressure intended
       to circumvent and discourage the exercise of the right
       to trial, and required to expend life and funds for
       legal defense.

186.   The defendants, and all of them, known and unknown,
       through their acts, omissions, and  agendas continue
       to pursue a course of action designed to deny, deteriate,
       and subjugate the right to trial under the Fifth and
       Sixth Amendments of the Constitution, Bill of Rights,
       and the Constitution of Pennsylvania.

187.    Between December 2003 and March 2004, Schweitzer in
        a good faith effort to address the errors being comm-
        itted, by and through the defendants, and DOD Agents,
        on behalf of the United States, Schweitzer filed and
        served "Affidavits," Habeas Corpus Petitions, and
        vigorously noticed all persons who had prior knowledge
        of the matter, including Court Officials, Assistant
        United States Attorneys, United States Probation Off-
        icials, and the Senior Legal Advisor to the Clerk for
        the United States Court of Appeals, Third Circuit,
        Bradford A. Baldus, [hereinafter Baldus].

188.    All individuals who had over the course of time, touched
        reviewed, relied upon, or passed upon the issues, were
        in good faith and fair dealing advised of the failure
        to obtain redress, and of the United States continued,
        and renewed intent to use the 1985 void judgment to
        damage and harm Schweitzer.

189.    Between March 2003 and August 2004, Schweitzer refused
        to be pressured by his Attorney Miller into the govern-
        ments offer to plead and demanded his right to trial.

190.    Schweitzer and Miller had a conflict of interest, which
        was brought to a head when Schweitzer fired Miller, AUSA
        Hall, insisted that the court hold a hearing to ensure
        that the firing was not for delay, but for valid reasons.

191.    Upon a full hearing in open court, Judge Gardner, [herein
        after Gardner], determined that Schweitzer had proved

four of the five possible factors which allow for the firing of legal counsel, and that the fifth factor was almost proved.

192.  Schweitzer was allowed to dismiss Attorney Miller, and the allegations of the rampid practice of "Fee & Plea" would have to wait for another day to be adjudicated.

193.  Schweitzer was additionally burdened with the condition that any new counsel that was hired would not be able to file any Pre-trial motions, nor request or receive an extension of the trial date.

194.  These actions being taken inspite of the courts several findings that extensions in time were appropriate "in the interest of justice."

195.  The critical errors and intentional protections of the government's case that occurred as a result of Jeffery Miller, would now be carried on to Schweitzer's new defense counsel.

196.  Schweitzer's Fifth Amendment right to trial was being minipulated throught the government's placing his criminal history in the indictment, a document which would be given to the jury, the coercive chilling effect of which is a well documented and prejudicial to any determination of the presumption of innocence, if not critical.

197.  Attorney Robert Simone, came to the aid of Schweitzer and despite being hampered with not being able to address the pre-trial matters.

198.    In a continuing effort to obtain redress of the
        1985 void judgment and the failure to receive both
        procedural and substantive due process relative to the
        matter, Schweitzer, in advance of harm, and in an
        abundance of caution, filed a "Declaratory Judgment
        Action" before the District Court, Judge Gardner.

199.    Gerald B. Sullivan, attorney for the government, motioned
        the court to again avoid any review of the 1985 void
        judgment in protection of the judgment and the governments
        2005 Case-in-Chief.

200.    The aforsaid acts and omissions of the defendants, and
        all of them, were motivated in part by the intention
        of the defendants to discriminate against Leo F. Schweitzer,
        III, because of his status as a convicted felon.

201.    As a direct and proximate result of the intentional,
        malicious, reckless, and/or negligent actions and omissions
        of the defendants, as set forth above, Schweitzer was
        deprived of his liberty, deprived of his right to freedom
        of speech and to petition the government for redress
        of grievances, denied his rights to equal protection
        of the law, deprived of his liberty without procedural
        and substantive due process of law, denied a fair trial,
        forced to enter a plea to acts known to be only "State
        Law breach of Contract," forced to endure emotional and
        physical suffering, and required to expend life and
        funds for legal defense.

250.    The actions, conduct, and omissions of the United States
        by and through the defendants, known and unknown, and its
        agents, violated the rights of the plaintiff, under the
        First, Fourth, Fifth, Sixth, Eight, Ninth, Tenth, Thirteenth,
        and Fourteenth Amendments of the Constitution of the
        United States, the Due Process Clause, Equal Protections
        Clause, Privileges and Immunities Clause of Article IV
        of the Constitution, and the Constitution of the Common-
        wealth of Pennsylvania.


WHEREFORE, Leo F. Schweitzer, III, requests that this Court:

    (a)   Award compensatory damages to Schweitzer-$1,154,901,390.
          against the defendants, jointly and severally;
    (b)   Award costs and attorney fees to Schweitzer;
    (c)   Award such other and further relief as this
          Court mau deem appropriate.

          **THE PLAINTIFF HEREBY DEMANDS JURY TRIAL**

          **ON THOSE COUNTS ON WHICH HE IS ENTITLED**

          **TO HAVE A TRIAL BY JURY.**


Dated: 10/14/07

                    Leo F. Schweitzer, III   Pro Se



CERTIFIED MAIL

7006 0100 0004 3740 5300

LEO F. SCHWEITZER
34024066
BOX 200, UNIT G
FPC CANAAN
WAYMART, PENNSYLVANIA
18472

CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
235 NORTH WASHINGTON AVENUE
SCRANTON, PENNSYLVANIA                    18501

LEGAL MAIL
SPECIAL MAIL

RECEIVED
SCRANTON

OCT 1 8 2007

MARY E. D'ANDREA, CLERK
Per_____

U.S. POSTAGE
$0.00